**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1570-20

J.A.W.,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES, STATE
POLICE RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued January 19, 2022 – Decided March 2, 2022

Before Judges Mayer and Natali.

On appeal from the Board of Trustees of the State Police Retirement System, SPRS No. x-x235.

Larry S. Loigman argued the cause for appellant.

Matthew C. Melton, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Jane C. Schuster, Assistant Attorney General, of counsel; Christopher Meyer, Deputy Attorney General, on the brief).

PER CURIAM

From approximately November 2001 until December 13, 2018, petitioner J.A.W.,[1] was employed as a Trooper with the New Jersey State Police (NJSP) and was a member of the State Police Retirement System (SPRS). Pursuant to N.J.S.A. 53:5A-28, a SPRS member who has "established [ten] years of creditable service" and "separated voluntarily or involuntarily from . . . service, before reaching age [fifty-five]" may receive deferred retirement benefits, provided the separation is "not by removal for cause on charges of misconduct or delinquency." Petitioner's application for those future benefits was denied by the Board of Trustees of the State Police Retirement System (Board) in a final decision on that ground and he now appeals. We affirm.

I.

In 2018, petitioner was charged with one count of fourth-degree falsifying or tampering with records, N.J.S.A. 2C:21-4, arising from allegations that in February 2018, he administered an Alcotest without being certified to do so, and submitted reports falsely identifying another officer as the Alcotest

---

[1] In our March 15, 2021 order, we denied petitioner's application to seal the record but directed that all filings identify petitioner by his initials.

A-1570-20

administrator.[2] Petitioner applied for admission into a Pretrial Intervention Program (PTI), and as a condition for his admission into that diversionary program, his employment with the State Police was terminated by way of a consent order of forfeiture of employment, which indicated that it was entered "pursuant to N.J.S.A. 2C:51-2."

Petitioner completed his PTI requirements, and the court dismissed his criminal charge. He then applied for expungement of his criminal record, which the court also granted.

Petitioner thereafter applied for deferred SPRS retirement benefits. The Board reviewed and denied his application in an October 8, 2020 letter, finding his termination constituted a "forced resignation" or "removal for cause" under N.J.S.A. 53:5A-28. He then requested reconsideration of his application and a hearing before the Office of Administrative Law (OAL), which the Board denied.

In petitioner's reconsideration request, his then-counsel wrote to the Board on November 11, 2020 and stated that petitioner had an "impeccable record" but acknowledged that his separation of employment was related to a "2018 incident

---

[2] Petitioner waived his right to require the State to proceed by way of indictment as well as his right to a jury trial. Accordingly, the State charged him with the fourth-degree charge by way of accusation.

where [petitioner] administered a breathalyzer test with the wrong Trooper's name on the certification." Counsel further explained it was petitioner's amendment of "that certification and report that led to the . . . filing [of] fourth-degree charges against him."

Petitioner's counsel also disputed that he was removed for cause under N.J.S.A. 53:5A-28, claiming he voluntarily resigned and was never subject to disciplinary charges based on misconduct or delinquency. Finally, on January 25, 2021, his counsel also requested that the Board either omit or redact from its final decision any information regarding the February 2018 incident in light of the expungement order, claiming the "public disclosure of events that were expunged . . . would be inconsistent with [that] order."

The Board issued a final agency determination and explained that under N.J.S.A. 53:5A-28 eligibility for deferred retirement benefits "turns on whether the applicant was removed for cause 'on charges of misconduct or delinquency.'" The Board also stated, relying on Widdis v. Pub. Emp. Ret. Sys., 238 N.J. Super. 70, 80 (App. Div. 1990), and two unpublished cases from our court, that "[i]t is well-settled that a forfeiture of public employment pursuant to N.J.S.A. 2C:51-2 constitutes an 'involuntary termination' and/or 'removal for cause' for purposes of N.J.S.A. 53:5A-28." It therefore determined petitioner was ineligible to

4

receive deferred benefits because he consented to the December 13, 2018 forfeiture order, which was premised on charges of misconduct.

The Board explicitly rejected petitioner's argument that he was entitled to deferred benefits because he was not convicted of a crime. It stated that disqualification under N.J.S.A. 53:5A-28 requires only "charges of misconduct" and explained that such "misconduct" need not be criminal, nor even an indictable offense, again relying on unpublished cases from our court for that proposition. Finally, the Board explained that because the matter did not "entail any disputed questions of fact" an evidentiary hearing was not required. This appeal followed.

## II.

We distill from petitioner's appellate submissions four primary arguments. He first argues that the Board erred in interpreting N.J.S.A. 53:5A-28 and concluding he was subject to the automatic forfeiture of his deferred retirement benefits. Instead, he claims his eligibility should have been considered by balancing the equitable factors enumerated in Uricoli v. Board of Trustees, Police & Firemen's Retirement System, 91 N.J. 62 (1982), as codified in N.J.S.A. 43:1-3. Second, petitioner contends the Board erred because it relied on cases that involved applicants who had been convicted of crimes, unlike his

circumstance, that merely involved charges that were dismissed after he completed PTI. Third, he argues that the Board's decision was "improper in the absence of fact-finding," and that the Board erroneously relied on his expunged records. Finally, relying on State v. Anderson, 463 N.J. Super. 168 (App. Div. 2020), aff'd as modified, 248 N.J. 53 (2021), cert. denied, 142 S. Ct. 770 (2022), he maintains for the first time before us that the complete forfeiture of his pension was an excessive punishment.[3] We disagree with all of these arguments.

We review petitioner's contentions in accordance with our standard of review and note, significantly, that N.J.S.A. 53:5A-30 authorizes the Board to interpret and implement N.J.S.A. 53:5A-28. In such circumstances, we generally give deference "to the interpretation of statutory language by the agency charged with the expertise and responsibility to administer the scheme . . . 'unless the interpretation is "plainly unreasonable."'" Acoli v. N.J. State Parole Bd., 224 N.J. 213, 229-30 (2016) (quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)). "If there is any

---

[3] Petitioner also incorrectly contends that the Board determined that his service was "not creditable." The Board clearly found that petitioner earned sixteen years and nine months of service credits, which are determined under N.J.S.A. 53:5A-6. The Board's decision, however, addressed whether petitioner was eligible for deferred retirements benefits pursuant to N.J.S.A 53:5A-28. The amount of petitioner's creditable service and his right to deferred retirement are distinct concepts addressed under separate statutory provisions.

A-1570-20

fair argument in support of the course taken [by the agency] or any reasonable ground for difference of opinion among intelligent and conscientious officials, the decision" should not be disturbed. Lisowski v. Borough of Avalon, 442 N.J. Super. 304, 330 (App. Div. 2015) (alteration in original) (quoting City of Newark v. Nat. Res. Council in Dep't of Envtl. Prot., 82 N.J. 530, 539 (1980)).

Further, when reviewing pension disputes like the deferred retirement benefits at issue here, we recognize that "the public pension systems are bound up in the public interest and provide public employees significant rights which are deserving of conscientious protection." Zigmont v. Bd. of Trs., 91 N.J. 580, 583 (1983). "[P]ension statutes are 'remedial in character' and 'should be liberally construed and administered in favor of the persons intended to be benefited thereby.'" Klumb v. Bd. of Educ. of Manalapan-Englishtown Reg'l High Sch. Dist., Monmouth Cty., 199 N.J. 14, 34 (2009) (quoting Geller v. Dep't of Treasury, Div. of Pensions & Annuity Fund, 53 N.J. 591, 597-98 (1969)). They must also "be liberally construed in favor of public employees . . . [because] they constitute deferred compensation earned by the employee during his years of service." Widdis, 238 N.J. Super. at 78. However, while "an employee is entitled to [such] liberality . . . when eligible for benefits, . . .

eligibility is not to be liberally permitted." Smith v. State, Dep't of Treasury, Div. of Pensions & Benefits, 390 N.J. Super. 209, 213 (App. Div. 2007).

III.

With these principles in mind, we turn to petitioner's first and second arguments which are resolved by the following pertinent language of N.J.S.A. 53:5A-28:

> Should a [SPRS] member, after having established [ten] years of creditable service . . . be separated voluntarily or involuntarily from the service, before reaching age [fifty-five], and not by removal for cause on charges of misconduct or delinquency, such person may elect to receive the payments provided . . . or a deferred retirement allowance . . . .
>
> [(emphasis added).]

The plain language of this statute leaves no room for discretion by the Board: any member removed as a public employee for charges of misconduct or delinquency is ineligible to receive benefits from SPRS as a matter of law. Although the terms "misconduct" or "delinquency" are not defined, there is, however, no support in the statute for the interpretation urged by petitioner that the "charges" referenced must develop into criminal convictions before the Board can deny deferred retirement benefits. See DiProspero v. Penn, 183 N.J.

8

477, 492 (2005) ("We ascribe to the statutory words their ordinary meaning and significance.").

In this case, the Board evaluated petitioner's request for deferred retirement benefits and determined based on the entry of the forfeiture order and other proofs submitted,[4] that petitioner's employment was terminated after he was "charged with one count of fourth-degree Falsifying or Tampering with records in violation of N.J.S.A. 2C:21-4," and he was ordered to "forfeit any and all public employment."

Further, petitioner was clearly subject of an involuntary separation from the State Police for cause. Although he vaguely contends he "ended his employment with the State Police," there is no evidence in the administrative or appellate record to support the conclusion, by way of direct evidence or reasonable inference, that petitioner voluntarily ceased working with the State Police of his own accord and before the State filed criminal charges against him.

---

[4] For reasons unexplained by the parties, the October 8, 2020 correspondence which memorializes the Board's initial decision is not included in the record on appeal. Further, petitioner included only the November 11, 2020 and January 25, 2021 letters from his counsel in support of reconsideration. Thus, it does not appear that all materials referenced and relied upon by the Board are before us.

Instead, as evidenced by his plea colloquy and the forfeiture order, the record supports but one conclusion: he forfeited his position as a condition of his admission into PTI. See Widdis, 238 N.J. Super. at 80 ("Involuntary termination means . . . that the member has been fired or forced to resign."). Indeed, his separation from the State Police occurred on December 13, 2018, the date of the forfeiture order. That separation was clearly based on "charges of misconduct or delinquency" because it was predicated on his charge of falsifying or tampering with records. N.J.S.A. 53:5A-28. Therefore, the Board's decision was not "plainly unreasonable," and as a consequence, is entitled to our deference. Petitioner was properly denied retirement benefits pursuant to N.J.S.A. 53:5A-28.

We also conclude that Uricoli provides no support for plaintiff's claim for deferred benefits under the statute because the applicable statute here, N.J.S.A. 53:5A-28, is unlike N.J.S.A. 43:16-2 and N.J.S.A. 43:16A-7, the Police and Firemen's Retirement System (PFRS) disability provisions at issue in Uricoli. As noted, the terms of N.J.S.A. 53:5A-28 plainly condition a SPRS member's eligibility for deferred retirement benefits upon the absence of any for-cause removal from employment and in this regard parallels the automatic-forfeiture language expressed in the deferred retirement provisions of the PFRS statute.

10

See N.J.S.A. 43:16A-11.2 (requiring that the claimant was not removed "for cause on charges of misconduct or delinquency"). It is also similar to the language in the statutes governing deferred retirement benefits under the Public Employees Retirement System (PERS). See N.J.S.A. 43:15A-38 (disqualifying a public employee in the PERS system from receiving deferred retirement benefits if he or she has been "remov[ed] for cause on charges of misconduct or delinquency"). Simply put, the Uricoli factors are only applicable when automatic forfeiture is not provided for by statute. See Uricoli, 91 N.J. at 74 (noting that Uricoli was barred from claiming deferred retirement benefits under N.J.S.A. 43:16A-11.2, the PFRS analog to N.J.S.A. 53:5A-28). Thus, the multi-factor balancing test of Uricoli is simply inapplicable here.

We reached a similar conclusion in Borrello v. Board of Trustees, Public Employees' Retirement System, 313 N.J. Super. 75 (App. Div. 1998) concerning the unqualified forfeiture language of the PERS deferred retirement provision, N.J.S.A. 43:15A-38. The petitioner in Borrello had been dismissed from his employment as a parks supervisor after he was convicted of third-degree misconduct in office. Id. at 76. The PERS Board, relying upon the terms of the statute, denied his claim for benefits. Ibid. Borrello argued on appeal that the Board had erred in not applying the Uricoli balancing factors. Ibid. We affirmed

11

the denial of benefits, determining that his right to obtain deferred retirement benefits was "automatically forfeited by the express language" of the statute. Id. at 78. See also Anderson, 248 N.J. at 73-74.

Finally, we conclude petitioner's contention that we should reverse the Board's decision because it relied on cases involving applicants who had been convicted of crimes, whereas his charge was dismissed after his completion of PTI, is similarly without merit. Regardless of the authority relied upon by the Board, as addressed, supra, and as the Board clearly explained, ineligibility for deferred benefits pursuant to N.J.S.A. 53:5A-28 requires only "charges of misconduct or delinquency" rather than an actual conviction.[5] The fact that petitioner was not convicted is immaterial under the plain language of N.J.S.A. 53:5A-28, in light of his agreement to forfeit his pension as a condition of entering PTI to address the fourth-degree charge.

IV.

We also reject petitioner's third contention that the Board improperly reached its decision without necessary and required fact-finding and without a

_____

[5] We understand that in certain counties, the State conditions an individual's admittance into PTI on a guilty plea. As no party has provided us with a Judgment of Conviction, or represented that defendant did, in fact, plead guilty prior to his entry into the diversionary program, we assume for purposes of our opinion that he did not.

12

contested hearing before the OAL. He also claims the Board erroneously relied on expunged records, and specifically the accusation charging him with fourth-degree falsifying records and the consent order in which petitioner agreed to "forfeit" his public employment as a condition of entering PTI. We conclude all of these arguments are without merit.

"Fact-finding is a basic requirement imposed on agencies that act in a quasi-judicial capacity." In re Issuance of Permit by Dep't of Envtl. Prot., 120 N.J. 164, 172 (1990). "An agency must engage in fact-finding to the extent required by statute or regulation . . . ." Id. at 173. If, after conducting that careful and principled review, an appellate court is satisfied that the findings and conclusions of the administrative body find support in the record, an affirmance is appropriate. In re Taylor, 158 N.J. 644, 657 (1999). "It is well-established that where no disputed issues of material fact exist, an administrative agency need not hold an evidential hearing in a contested case." Frank v. Ivy Club, 120 N.J. 73, 98 (1990); see also N.J.A.C. 17:1-1.3(g) ("If the granted appeal involves solely a question of law, the Board . . . may . . . issue a final determination, which shall include detailed findings of fact and conclusions of law, based upon the documents, submissions and legal arguments of the parties.").

Here, the Board clearly engaged in fact-finding, which it expressly set forth in its written final agency decision. Further, it did not err in declining to afford petitioner a hearing because, as the Board explained, its decision did not turn on any material issues of fact, and petitioner has failed to identify any before us. There is no dispute that he was charged with a fourth-degree crime that directly involved his employment as a Trooper, and for which he agreed to forfeit his job and any future right to public employment, as a condition to enter PTI.

The Board also did not err in relying on the December 13, 2018 order of forfeiture of employment. "Expungement" is defined by statute as: "the extraction, sealing, impounding, or isolation of all records on file within any court, detention or correctional facility, law enforcement or criminal justice agency concerning a person's detection, apprehension, arrest, detention, trial or disposition of an offense within the criminal justice system." N.J.S.A. 2C:52-1. "Unless otherwise provided by law, if an order of expungement is granted, the arrest, conviction and any proceedings related thereto shall be deemed not to have occurred." N.J.S.A. 2C:52-27.

Before us, the Board argues that it properly considered the expungement order consistent with In re D.H., 204 N.J. 7 (2010). In that case, our Supreme

Court held "the entry of an order of expungement should have no effect—either direct, collateral or preclusive—on a separate mandatory order of forfeiture of public employment." Id. at 25. It reasoned that forfeiture of public employment under N.J.S.A. 2C:51-2 is a "result 'otherwise provided by law' that is exempt from the expungement statute." Id. at 24 (quoting N.J.S.A. 2C:52-27). Further, it concluded such an interpretation gave "full expression to the policies underlying both" statutes. Id. at 25.

Petitioner again stresses that unlike In re D.H., and the other cases relied on by the Board, petitioner was never convicted of a crime, and thus despite his consent to an order relying on N.J.S.A. 2C:51-2, that cited authority is inapplicable to his circumstance. We need not resolve the parties differing interpretation of In re D.H. because the Board was permitted to rely on the forfeiture order as petitioner requested that the Board do so. Indeed, in its final decision, the Board expressly noted that the forfeiture order was actually provided to it by petitioner's counsel, who stated it was "required" for their determination, which evidenced petitioner's consent for the Board to consider the order. See, e.g., Ulinsky v. Avignone, 148 N.J. Super. 250, 255-56 (App. Div. 1977) (explaining that a defendant who obtained an expungement can "authorize and consent" to the disclosure of expunged records). We also do not

consider petitioner's counsel request the Board omit or redact reference to the February 18 incident in its final decision as a limitation on the Board's ability to consider the forfeiture order.

Further, as a matter of fundamental fairness, it was proper for the Board to consider the fact that defendant was charged with a fourth-degree offense, for which he forfeited his position with the State Police and entered PTI, as those facts were critical to the Board's obligations when interpreting the applicable statute before it. See In re Osworth, 365 N.J. Super. 72, 78 (App. Div. 2003) (a court properly considered the "underlying facts" of charges dismissed after PTI when considering an application for a firearms permit).

Finally, although petitioner contends the Board improperly relied on the expunged accusation, there is no reference to that document in the Board's final decision. That defendant was so charged was also identified in the forfeiture order and was not a contested fact, in any event.

We acknowledge that the forfeiture order referenced N.J.S.A. 2C:51-2. That statute requires forfeiture of a position such as one held by petitioner if he is "convicted of an offense . . . involving dishonesty or of a crime of the third degree or above" or of "an offense involving or touching such office, position or employment" or as otherwise required by our Constitution.

16

As petitioner stresses before us, he was never convicted of a crime. As best we can discern from his contentions before us, it was therefore improper for the Board to rely on N.J.S.A. 2C:51-2, and assumedly the forfeiture order that relied upon that statutory provision, to deny petitioner his deferred retirement benefits. We do not agree because even without reference to N.J.S.A. 2C:51-2, the forfeiture order to which petitioner consented provides the critical information necessary to support the Board's decision.

First, as noted, the forfeiture order contained a reference to the fourth-degree offense for which defendant was charged. Second, it indisputably established that petitioner consented to forfeiting "any and all public employment" and was "forever disqualified from holding any position of honor, trust, or profit under the State . . . or political subdivisions." Further, the employment forfeiture order was consistent with petitioner's statement at the plea hearing. Thus, that the order referenced N.J.S.A. 2C:51-2 was not critical to resolution of the issues before the Board, as petitioner's ability to obtain his retirement benefits was guided by the language in N.J.S.A. 53:5A-28, which does not require a conviction.

A-1570-20

V.

Finally, we discern from petitioner's fourth point that he contends the forfeiture of his retirement benefits constitutes a violation of federal and state constitutional prohibitions against excessive fines. Petitioner's argument is grounded in the Eighth Amendment of the United States Constitution which provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Similarly, Article I, Paragraph 12 of the New Jersey Constitution states that "[e]xcessive bail shall not be required, excessive fines shall not be imposed, and cruel and unusual punishments shall not be inflicted." We conclude that petitioner's argument is procedurally improper and substantively without merit.

His contention is procedurally defective because he failed to raise the argument in his administrative proceeding, and it is therefore not properly before us. We generally decline to consider questions or issues not presented below when an opportunity for such a presentation is available unless the questions raised on appeal concern jurisdiction or matters of great public interest. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Petitioner's contentions do not satisfy the Nieder exceptions.

18 A-1570-20

In any event, petitioner's argument is substantively without merit as it is contrary the recent decision by our Supreme Court in <u>Anderson</u>, 248 N.J. 53, upon which he principally relies. In <u>Anderson</u>, the Court held that where pension benefits are conditioned on a mandatory, rather than discretionary, forfeiture statute the would-be beneficiary has no property right in his pension and therefore, forfeiture "does not constitute a fine for purposes of an excessive-fine analysis under the Federal or State Constitution." <u>Id.</u> at 75-76. As noted, forfeiture under N.J.S.A. 53:5A-28 is mandatory upon termination "for cause on charges of misconduct," and therefore, petitioner had no property interest in his pension and his forfeiture is not subject to an Eighth Amendment excessive-fine analysis.

To the extent we have not specifically addressed any of petitioner's claims, it is because we conclude they are of insufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1570-20