927 A.2d 560 (2007)
394 N.J. Super. 478
Frank CAMINITI, Petitioner-Appellant,
v.
BOARD OF TRUSTEES, POLICE AND FIREMEN'S RETIREMENT SYSTEM, Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 14, 2006.
Decided July 11, 2007.
*561 Steven J. Kossup, argued the cause for appellant.
Eileen S. DenBleyker, Deputy Attorney General, argued the cause for respondent (Stuart Rabner, Attorney General, attorney; Patrick DeAlmeida, Assistant Attorney General, of counsel; Linda Bilec, Deputy Attorney General, on the brief).
*562 Before Judges KESTIN, PAYNE and GRAVES.
The opinion of the court was delivered by
KESTIN, P.J.A.D.
Petitioner, Frank Caminiti, appeals from a decision of the Board of Trustees of the Police and Firemen's Retirement System adopting the findings and conclusions contained in an administrative law judge's (ALJ) initial decision and denying petitioner's application for accidental disability retirement benefits. We affirm.
Our review of an administrative agency's determination is limited. We may overturn only those decisions that are arbitrary, capricious, unreasonable; or violate legislative policies; or are unsupported by substantial credible evidence in the record. See Murray v. State Health Benefits Comm'n, 337 N.J.Super. 435, 442, 767 A.2d 509 (App.Div.2001).
The facts of the matter are straightforward and essentially undisputed. Petitioner, a sheriff's officer, and two police officers, were engaged in a confrontation with an individual who was wielding a tire iron. They persuaded the man to drop the implement, and petitioner forced him to the ground. Petitioner and another officer then walked the suspect to a nearby automobile. Preliminary to a search, a standard inquiry was made of the suspect whether he possessed any objects that could cause injury. The inquiry elicited a negative response. During the search, the suspect unexpectedly moved backward and petitioner's finger was deeply stuck by a hypodermic needle in the suspect's shirt pocket.
The resulting treatment and medical monitoring for HIV, AIDS, and hepatitis C was extended and difficult for petitioner. He alleged that the side effects of prescribed medications and the required personal regimen resulted in post-traumatic stress disorder that rendered him totally and permanently disabled as a result of the incident. The basic contention was accepted and petitioner was found to be eligible for ordinary retirement benefits. His application for the higher benefit available for accidental disability was disallowed, however. The matter was handled as a contested case with an evidentiary hearing and an initial decision by the ALJ, and a final decision by the agency head, the Board of Trustees.
Decision in the matter called for an analysis of the particular facts involved and an application of the "traumatic event" standard of N.J.S.A. 43:16A-7 with the gloss provided by the Supreme Court in Kane v. Board of Trustees, Police and Firemen's Retirement System, 100 N.J. 651, 663, 498 A.2d 1252 (1985), and other cases.
The Board, in adopting the ALJ's decision, determined that although petitioner had satisfied the second prong of Kane's three-part test, "that he met involuntarily with the object or matter that was the source of the harm[,]" id. at 663, 498 A.2d 1252, he had not satisfied the other two elements of the test: "that his injuries were not induced by the stress or strain of the normal work effort;" and "that the source of injury itself was a great rush of force or uncontrollable power." Ibid. The determination was based on findings that personal searches in circumstances such as those occurring here, and the risk of injury, even from a needle-stick, were routine in petitioner's calling; and that the injury incurred was not the "catastrophic stressor" envisaged by the third part of the test. Therefore, the Board concluded, the "traumatic event" test of the statute had not been satisfied. *563
The Supreme Court, itself, has referred to the "traumatic event" standard as an "elusive concept[.]" Gable v. Board of Trustees, Public Employees' Retirement System, 115 N.J. 212, 215, 557 A.2d 1012 (1989). With all of the shortcomings of that standard in establishing a fairly ascertainable gauge for determining eligibility for accidental disability pension benefits, and even granting that the judicially crafted three-pronged test for satisfying the "traumatic event" standard provides no uniformly workable basis for confidently predicting the outcome in any typical case, see Dennis v. Board of Trustees, Public Employees' Retirement System, 394 N.J.Super. 484, 927 A.2d 564, 2007 WL 2004958 (App.Div.2007), we are not at liberty to depart from either. And, we are governed by the corollary of the substantial evidence rule that "[w]here there is substantial evidence in the record to support more than one regulatory conclusion, `it is the agency's choice which governs.'" In re Vineland Chemical Co., 243 N.J.Super. 285, 307, 579 A.2d 343 (App.Div.), certif. denied, 127 N.J. 323, 604 A.2d 598 (1990) (quoting De Vitis v. New Jersey Racing Comm'n, 202 N.J.Super. 484, 491, 495 A.2d 457 (App.Div.), certif. denied, 102 N.J. 337, 508 A.2d 213 (1985)). Moreover, where the result is fairly debatable and is based upon policy choices made by the Legislature and committed for administration and enforcement to a designated agency, "we cannot substitute our judgment for that of the agency, even if we would have decided the case differently," Murray, supra, 337 N.J.Super. at 443, 767 A.2d 509, had we been empowered to make the evidentiary choices and apply the governing policies in the first instance.
The rule is no different where the agency has reached contrary conclusions in similar matters, as petitioner suggests has occurred in this subject matter area by calling our attention to other unreported cases decided by the Board and citing some of the reported decisions since Kane. We have no warrant to enforce a rule of consistency upon any agency by selecting one policy path over another. The remedy is with the Legislature and its power, in the light of experience, to modify the eligibility test and replace it with one deemed more workable, i.e., uniformly useful in reaching objectively reasonable, consistent, and principled results.
Based on our review of the record in the light of the written and oral arguments advanced by the parties and prevailing legal standards, we discern that the Board's decision in this matter was based upon substantial credible evidence; was not arbitrary, capricious, or unreasonable; and reflects a respectable application of statutory and case law standards. Accordingly, we are constrained to affirm.
Also pending in this matter are two reserved motions by the respective parties. On November 1, 2005, the Board moved to strike petitioner's brief and appendix "because they contain material not in the record below." Petitioner retaliated with a response and two cross-motions, the first supported by a brief containing thirteen points, some in defense of the included material; others with attacks, including some ad hominem, on the Board and its counsel; and still others supporting an application to supplement the record. The second cross-motion, supported by another brief, was for sanctions, including counsel fees and costs. In our orders of January 4, 2006, reserving decision on the motions until the appeal was decided on the merits, we noted that we would "not consider any documents that were not part of the record before the agency." We have not; and we now dismiss the motion and deny the cross-motion in all particulars.
*564 The decision of the Board of Trustees is affirmed.